The Magistrate's recommendations will therefore be accepted and adopted in full.

Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

BURGER KING CORPORATION, Defendant.

Civ. A. No. 80–0111–C.

United States District Court, D. Massachusetts.

June 19, 1981.

John S. Casler, Boston, Mass., Frank V. McDermott, U. S. Dept. of Labor, Boston, Mass., for plaintiff.

Martin D. Heyert, Kelley, Drye & Warren, New York City, William F. Joy, Morgan, Brown, Kearns & Joy, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by the Secretary of Labor against Burger King Corporation pursuant to the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. § 201 et seq. Plaintiff seeks a permanent injunction against defendant continuing to violate the Act and other relief including an award of back wages to certain of defendant's employees.

Defendant at all pertinent times was, and is, a corporation with a principal place of business in Lexington, Massachusetts. Defendant is an enterprise engaged in interstate commerce and has an annual gross sale of not less than $250,000.

The case was tried to the Court, and after the conclusion of the four-day trial, the parties filed requests for findings and rul-

ings supported by memoranda of law in support of their respective positions.

At the trial, the Secretary called eight witnesses and Burger King called 10 witnesses. The evidence also included 28 exhibits proferred by defendant and a stipulation that another 20 witnesses, if permitted to do so, would give substantially the same testimony regarding the work they did as was given by defendant's witnesses Smith, Sullivan, and Clark. It should be noted that both the Secretary and the defendant advised the Court before the trial that each party planned to call a very large number of witnesses all of whom were either present or former assistant managers at various Burger King stores. At that point, prior to the trial, an Order was entered sharply reducing the number of witnesses that each side would be permitted to call, said Order being premised on this Court's opinion (confirmed at the trial) that the various assistant managers testimony would be similar, repetitive, cumulative, and of no particular probative value to the Court over and above the probative value of the first two or three witnesses called by each side.

I find that Burger King operates both company-owned and franchised fast-food stores throughout the United States and several foreign countries and that the Burger King corporation operates about 15%–20% of its units with its own management and the remaining, approximately 80%, of the Burger King shops are operated by licensees or franchisees who are authorized by the corporation to use the trademark, facilities, and premises under the name Burger King. I find that each Burger King restaurant usually has one manager and two assistant managers. This case concerns 44 retail restaurants owned by Burger King subsequent to January 1, 1978 with the following locations in either Massachusetts or Connecticut:

Cummings Highway, Mattapan, MA
Essex St., Lawrence, MA
881 Moody St., Waltham, MA
392 Chelmsford St., Lowell, MA
439 John Fitch Hwy., Fitchburg, MA
484 Boston Post Rd., Marlboro, MA
1040 Revere Beach Pkwy., Chelsea, MA
197 Main St., Stoneham, MA
61 Broadway St., Malden, MA
150 Everett Ave., Chelsea, MA
670 Adams St., Quincy, MA
210 Brighton Ave., Allston, MA
645 Commonwealth Ave., Boston, MA
62 Granite St., Quincy, MA
505 Quincy Ave., Quincy, MA
606 Belmont St., Brockton, MA
655 Bridge St., N. Weymouth, MA
393 Washington St., Weymouth, MA
645 Crescent St., Brockton, MA
1835 Washington St., Hanover, MA
1045 Boston Rd., Springfield, MA
753 Memorial Dr., Chicopee, MA
220 Westfield St., W. Springfield, MA
344 King St., Northampton, MA
191 Park Rd., W. Hartford, CT
745 Enfield St., Enfield, CT
524 Farmington Ave., Hartford, CT
70 Airport Rd., Hartford, CT
166 Thomaston Ave., Waterbury, CT
2253 Dixwell Ave., Hamden, CT
683 Lakewood Rd., Waterbury, CT
888 Colony Rd., Wallingford, CT
880 W. Main St., Branford, CT
557 Long Hill Rd., Groton, CT
21 Salem Tpke., Norwich, CT
429 Coleman St., New London, CT
1033 Farmington Ave., Bristol, CT
543 W. Main St., New Britain, CT
451 E. Main St., Torrington, CT
102 Westfarms Mall, Farmington, CT
607 Boston Post Rd., Old Saybrook, CT
257 Flanders Rd., Niantic, CT
169 Whalley Ave., New Haven, CT
Chapel Square Mall, New Haven, CT

The Secretary seeks to restrain Burger King from withholding the payment of past overtime wages which the Secretary contends are due to 246 persons now or formerly employed by Burger King as assistant managers at the above-listed restaurants between January 1, 1978 and the present. Burger King seeks to avoid the back payments on the grounds that the assistant managers are exempt from the overtime

and record keeping requirements of the Act because they are executive or administrative employees within the meaning of 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.1 and § 541.2.

The issue of damages has been obviated by a stipulation that each assistant manager concerned with this case worked 49 hours in each work week that he or she worked at one of the Burger King restaurants, that none of the assistant managers were paid time and a half for the 9 hours in excess of the 40 hours that he or she worked, and that Burger King did not and does not keep records of the time such assistant managers work.

The basic issue between the parties is whether or not persons employed by Burger King as assistant manager I or assistant manager II, who earn a salary of less than $250 per week, are covered by the provisions of 29 U.S.C. §§ 206(a)(1) and 207(a)(1), or are exempt therefrom as executive employees under 29 C.F.R. 541.1(a–d) and (f) or are exempt under 29 C.F.R. 541.2(a–c) and (e). The resolution of the status of those employees is to be determined by what they in fact do in the day-to-day discharge of their job responsibilities, i. e. do they perform executive tasks or do they do work of the same type done by other concededly hourly employees of defendant?

At the trial the witnesses were divided into basically two classes of witnesses: persons who were at the time of the trial still employees of Burger King or persons who had been employees of Burger King in the recent past. In the former class were Larry W. Kohler, a senior vice president of Burger King who has been with defendant for approximately 10½ years, Deborah L. Smith, an assistant manager I who has been with Burger King approximately 5 years, Arthur P. Veves, a personnel department employee who has been with Burger King 4 years, and Karen Sullivan, an assistant manager I who has been with Burger King about 3 years. Those witnesses called by the plaintiff, particularly those who at the time of trial were still Burger King employees, testified exactly as desired by Burger King, maximizing the "executive" functions of assistant managers and minimizing any aspects of their employment which involved performance of duties also done by others who were concededly hourly employees. The witnesses called by the government were for the most part former Burger King employees. In this category were the witnesses Robert Hanlon, Debra DiSanti, Moses Raymond, Bien Venido Sisin, Elizabeth Gibson, and Dennis Palmer.

On the basis of the testimony adduced, I find that standard operating procedure is for each Burger King store to have one general manager who has charge of the restaurant and two assistant managers. I find that the two assistant managers normally work shifts which are different from each other but which partially overlap the shift of the general manager. I find that when the general manager is absent the assistant manager is *de facto* in charge of the store and that at such times the assistant manager normally directs the work of two or more other employees. I find that assistant managers have limited participation as to hiring, firing, and promotions consisting mainly of making suggestions or recommendations to the store manager which he is free to accept or reject.

I find that the entire Burger King operation is largely reduced to a series of predetermined and premandated steps. This appears graphically from defendant's exhibit M captioned "Manual of Operating Data." This loose-leaf compilation specifies in minute detail, in fact in minute colored-pictorial detail, exactly what is to be done step-by-step by Burger King employees in regard to every job including defrosting hamburger patties, chicken, steak, or french fried potatoes; or in preparing a hamburger, cheeseburger, steak sandwich, ham and cheese sandwich or fish sandwich, etc. The particularization in Exhibit M establishes that the procedures to be followed by employees of Burger King restaurants were highly standardized permitting only extremely limited deviation from rote procedures. This coupled with the very limited product line of foods sold at Burger King establishes, and I

find, that training of employees involved limited time, that the modus operandi could be quickly learned by new help, and that it required minimal supervision. I find that assistant managers do not customarily or regularly exercise any discretionary judgment on an executive level and that the Manual of Operating Data is such a how-to-do-it bible as to virtually eliminate anything of importance being done on a discretionary basis. I find, despite testimony to the contrary, which I do not believe, that assistant managers do in fact in most of the Burger King stores spend more than 40% of their working time in routine production tasks which are not of a managerial nature or caliber. I find that those tasks are mundane and exactly the same as those performed by concededly hourly employees. I further find that the so-called expediting or pushing which is done by assistant managers is not work of executive caliber but rather I find that it is routine, non-managerial production work. It should be noted that many of the chores testified to by witnesses called by Burger King were apparently intended to show executive work by assistant managers but I find they failed at that purpose. I have in mind such activity as checking the physical appearance of the grounds for cleanliness, checking rubbish barrels, looking for "major messes" in the restaurant, making "sure the tables are clean and the floor is swept," checking "equipment to make sure [my] equipment is working up to standards," talking "to the customers to find out their response as to how [our] service is and how the food is," tallying "up how many regular portions and large portions of fries [we] sold for the day," taking yields "so that we have control of how much lettuce is being used," and doing "a total store cash count."

All of the above-listed chores are the subject matter of mandated procedures prescribed in the operating manual in such great detail as to standardize them and eliminate the exercise of any substantial amount of discretion with reference to those tasks.

I find that there is a very wide gap between the theory of assistant managers duties as outlined in the operating manual and what is in fact done by assistant managers. I further find that the hoopla about "Whopper College" is a classic example of Madison Avenue hucksterism being substantially more smoke than fire, but smoke intended to conceal the fact that assistant managers were doing routine chores rather than performing as executives.

Of the five requirements contained in 29 C.F.R. 541.1, I find that defendant has failed to prove, by a preponderance of the evidence, that assistant managers pass the test contained in 29 C.F.R. § 541.-1(a)(c)(d)(e). Specifically I find that assistant managers customarily spend more than 40% of their work week on activities not directly or closely related to the performance of the work described in paragraphs (a) through (d) of 29 C.F.R. § 541.1. Accordingly, I rule that defendant who has the burden of proving that it is entitled to exemptions from the overtime and record keeping provisions of the Fair Labor Standards Act has not done so and I further rule that defendant's assistant managers I and II do not qualify for the Fair Labor Standards Act exemption contained in 29 U.S.C. § 213(a)(1).

Order accordingly.